UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

|  |  |
|---|---|
| XIOMARA LANDAETA, *et al.*, ) | |
| ) | |
| *Plaintiffs,* ) | |
| v. ) | Civil Action No.: 8:10-cv-03247-RWT |
| ) | |
| SHARON ABARJEL, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |

**PLAINTIFF'S PETITION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiff Xiomara Landaeta, Ana O. Ceron, Karan Santos, Guadalupe Velasquez, and Azucena Cruz, by and through undersigned counsel, file this petition for an award of their attorneys' fees and costs accrued in the prosecution of this matter. Counsel for the Plaintiffs and the Defendants have stipulated that a reasonable award of fees and costs is due to Plaintiffs' counsel, and the parties have further stipulated the reasonableness of Plaintiffs' counsel's rates in this matter. Accordingly, the sole issue to be resolved by the Court on May 18, 2011, is the amount of the reasonable award of fees and costs due to be awarded to Plaintiffs' counsel.

**Background**

Plaintiffs were employed by Da Vinci's Florist LLC and its owner ("Da Vinci's") as floral arrangers. Plaintiffs averred that Da Vinci's violated the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; Maryland Minimum Wage and Overtime Act ("MMWOA"), Md. Code Ann., Lab. & Empl. § 3-415; and Maryland Wage Payment and Collection Act ("MWPCA"), Md. Code Ann., Lab. & Empl. § 3-502 when it failed to properly compensate them at a rate of time and a half for the hours they worked in excess of forty (40) each week.

1

Counsel for Plaintiffs and Defendants are familiar with each other and enjoy a collegial working relationship. As such the Parties engaged in informal discovery after the initiation of the case, and the Parties eventually agreed upon a confidential settlement agreement completely resolving all of the Plaintiffs' claims. The terms of the settlement agreement are confidential; however, Plaintiffs submit that they were fully successful in their efforts in this matter.

## I.     Reasonableness of Rates

In the matter before this Court, Plaintiffs' counsel charged Plaintiffs' rates determined by and in accordance with those established in Appendix B to the Local Rules of this Court, entitled Rules and Guidelines for Determining Attorneys' Fees in Certain Cases. The Local Rules read, in relevant part:

> 3. Guidelines Regarding Hourly Rates
>
>    a. Lawyers admitted to the bar for less than five (5) years: $150-190.
>
>    b. Lawyers admitted to the bar for five (5) to eight (8) years: $165-250.
>
>    c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-300.
>
>    d. Lawyers admitted to the bar for fifteen (15) years or more: $275-400.
>
>    e. Paralegals and law clerks: $95-115.

App. B, D.M.D. Local Rules.

Accordingly, Plaintiffs ask the Court to award their attorneys' fees in the following amounts: attorney time for R. Scott Oswald at a rate of $400.00 per hour; attorney time for Nicholas W. Woodfield at a rate of $400.00 per hour; and legal assistant and law clerk time at a rate of $115.00 per hour. Defendants' counsel have stipulated to the reasonableness of these particular rates.

II.     **Reasonable Attorneys' Fees and Costs**

"The payment of attorney's fees to employees prevailing in FLSA cases is mandatory. 29 U.S.C. § 216(b)." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984) (emphasis added). The amount of the attorneys' fees, however, is within the sound discretion of the trial court. *See VanDyke v. Bluefield Gas Co.,* 210 F.2d 620, 622 (4th Cir. 1954). In its opinion in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court provided the framework for deciding the merits of fee petitions. The *Hensley* Court said, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. This lodestar "calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* The district court may reduce the award for inadequately documented hours, or for hours that were not "reasonably expended" due to overstaffing or inexperience. As in private practice, "[h]ours that are not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority." 461 U.S. at 434 (emphasis in original). Expenses incurred for paralegal/legal assistant services are also encompassed by, and thus are recoverable as, "attorney's fees." *See Missouri v. Jenkins*, 491 U.S. 274, 288-89 (1989) ("A reasonable attorney's fee" refers to a reasonable fee for an attorney's work product and thus must take into account the work not only of attorneys but also the work of paralegals.)

Plaintiffs, as petitioners, bear the burden of proof that claimed hours of compensation are adequately demonstrated and reasonably expended. Under *DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985), the "reasonableness of the time expended must… be judged by standards of the private bar" so that "hours claimed are to be examined in detail with a view to the… value of the work product to the client in light of the standards of the private bar." The other element of

3

the lodestar calculation (in addition to time reasonably expended) is the reasonableness of a plaintiff's attorneys' hourly rates.  In *Blum v. Stenson*, 465 U.S. 886 (1984), the Court held that fees under 42 U.S.C. § 1988 were to be "calculated according to the prevailing market rates in the relevant community." *Blum,* 465 U.S. at 895.  It is the petitioner's burden "to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 895 n.11.  In deciding the "prevailing market rates in the relevant community," the court may consider, among other things, the rates a plaintiff's attorney charges paying clients, and the rates that other lawyers in the community charge for similar work.

"When the applicant for a fee that carried [his] burden of showing that the claimed rate and number of hours were reasonable, the resulting product is presumed to be the reasonable fee" to which counsel is entitled.  *Blum* at 897; *see also City of Burlington v. Dague*, 505 U.S. 557 (1992) (holding that there is a "strong presumption" that the lodestar calculation represents the reasonable fee).  Additionally, in determining the reasonableness of fees, federal courts apply the twelve factors listed in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Fourth Circuit has adopted the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  *Rogers v. City of Virginia Beach*, 182 F.3d 909, *2 (4th Cir. 1999).  Those factors are listed as follows, and in practice these twelve factors become folded into a general analysis of the reasonableness of the time expended and the rate charged:

  A. The time and labor required;

  B. The novelty and difficulty of the questions raised;

  C. The skill requisite to perform the legal services properly;

  D. The preclusion of employment by the attorney due to acceptance of the case;

      E.  The customary fee;

      F.  Whether the fee is fixed or contingent;

      G.  Time limitations imposed by the client or the circumstances;

      H.  The amount involved and the results obtained;

      I.  The experience, reputation, and ability of the attorneys;

      J.  The undesirability of the case;

      K.  The nature and length of the professional relationship between the attorney and the client; and

      L.  Attorneys' fee awards in similar cases.

*Rogers v. City of Virginia Beach*, 182 F.3d at *2.

      **A.    The Time and Labor Required.**

In computing the reasonable hours expended, the fee applicant should reference contemporaneous time and expense records. *See Webb v. Bd. Of Educ.,* 471 U.S. 234, 238 at n.6 (1985). Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from her fee submission. *Hensley*, 461 U.S. at 434. An appraisal that time spent was "not reasonably necessary" to the litigation "turns on so many subjective factors that it seldom should be the basis for reduction of an attorney's fee." *Jacquette v. Black Hawk County*, 710 F.2d 455, 460-62 (8th Cir. 1983). Accordingly, courts should seek to avoid nit-picking disagreements, intransigence, and unreasonable negotiating positions in construing fee petitions and accord some deference to counsel's judgment on the amount of time that they considered necessary to prepare and pursue the case. *Commonwealth of Puerto Rico v. Heckler*, 745 F.2d 709, 714 (D.C. Cir. 1984).

The time and expense billing entries (in spreadsheet format) for this case are attached to this Memorandum as Exhibits 1 and 2, respectively. Billing entries were recorded contemporaneously and on a daily basis. The billing statements have also been reviewed by the undersigned, a principal of The Employment Law Group, P.C., who has concluded that they are an accurate recordation of the fees and costs associated with the prosecution of the Plaintiffs' FLSA claims. The Employment Law Group, P.C. cut any excessive or unnecessary work performed, and the fees submitted by Plaintiffs' counsel are those that The Employment Law Group, P.C. found to have been fair and reasonably necessary to the litigation after making a good-faith evaluation of all recorded hours of work performed in relation to Plaintiffs' case.

With the appropriate hours cut as a result of the review of Plaintiffs' fees, the total amount of hours expended in the prosecution of Plaintiffs' claims is 165.10 hours. Applying the appropriate hourly rates to the hours expended by each of the individuals who worked successfully to prosecute Plaintiffs' claims, the total attorneys' fees are $32,558.00.

In addition, Plaintiffs ask this Court to award them the out-of-pocket costs that The Employment Law Group, P.C. has incurred throughout the litigation. Out-of-pocket costs in this matter included travel, Westlaw research, delivery of papers, and professional fees. All of these costs were necessary to successfully prosecute Plaintiffs' statutory and common law claims. The summary of reasonable costs totals to $991.41. Accordingly, the total amount of attorneys' fees and costs sought in this Petition is $33,549.41.

    **B.    The Novelty and Difficulty of the Questions Raised.**

The issues in this litigation centered on Sharon Abarjel and DaVinci's Florists' failure to pay overtime at a proper rate, which occurred on a continuing basis for all years of Plaintiffs' employment. Defendants Abarjel and DaVinci's had incomplete and disorganized payroll

records, and they did not maintain adequate hourly records as they were required to by law. Accordingly, The Employment Law Group, P.C. had to create summaries from Plaintiffs' paychecks and Abarjel and DaVinci's incomplete records to serve as the basis of their claims. Abarjel and DaVinci's actions forced Plaintiffs to thoroughly and completely analyze Abarjel and DaVinci's records and to then create Excel spreadsheets to produce accurate estimates for Plaintiffs' undercompensated time.

### C.     The Skill Requisite to Perform the Legal Services Properly

Skill is a heavily weighted factor in the federal courts' lodestar analysis in federal courts "because experience and reputation are a mirror image of skill." *Peacock v. Bank of America Corp.*, 133 F. Supp. 2d 1322, 1327 (M.D. Fla. 2000). "Skill is evidenced by an attorney's initial case assessment, continuing negotiation and settlement attempts, persuasiveness, and other fundamental aspects of organization and efficiency." *Id.* "The underpinning for these facets of legal skill is knowledge, knowledge of trial practice and knowledge of substantive law." *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988).

The Employment Law Group, P.C. executed the litigation of Plaintiffs' case with organized efficiency.  Moreover, The Employment Law Group, P.C. concentrates its practice in employment law and related matters, and it prevailed in this case largely because of its specialization and focused preparation.  While counsel for Plaintiffs do not argue that another lawyer might have adequately presented Plaintiffs' case, The Employment Law Group P.C.'s diligence, strategic discovery of materials, and information relevant to Plaintiffs' claims and damages, and its knowledge of employment law trial practice made The Employment Law Group, P.C. uniquely situated to provide Plaintiffs with the best possible representation.

**D.     The Preclusion of Employment by the Attorney Due to Acceptance of the Case.**

The Employment Law Group, P.C. concentrates its practice in employment law and other employment-related matters, and as such is quite selective in the types and nature of cases it accepts.  The Employment Law Group, P.C. is currently litigating 88 cases in the state and federal courts of the District of Columbia, Virginia, Maryland, Florida, and California, and it has several matters currently pending before the EEOC, the MSPB, Office of Special Counsel, the Department of Labor, and the Court of Federal Claims.  The Employment Law Group, P.C. routinely declines one hundred and fifty to two hundred offers of employment each week.  Had the firm not expended its time and resources prosecuting Plaintiffs' claims, it would have expended its time and resources on other cases and compensable work, the majority of which would have paid full hourly rates.  Accordingly,  as a result of working on Plaintiffs' claims, The Employment Law Group, P.C. has forgone the opportunity to perform other work where it would have been able to charge its full hourly rates for its employees' time.

**E.  The Customary Fee.**

As noted above, The Employment Law Group, P.C.'s rates in this matter are equivalent to those that are customarily charged in the Greenbelt market (as FLSA representative actions vary dramatically based on the facts and circumstances of each case, there is no "customary fee" for these sorts of cases).

**F.  Whether the Fee is Fixed or Contingent.**

The Employment Law Group, P.C., agreed to accept Plaintiffs' claims on a contingency-fee basis, and The Employment Law Group, P.C. has paid all costs up front.  All monetary awards granted to Plaintiffs' pursuant to this motion for fees and costs will be used to pay The

Employment Law Group, P.C.'s hourly fees for the litigation and prosecution of Plaintiffs' claims.

### G. Time Limitations Imposed by the Client or the Circumstances.

The matter was resolved quickly, based on Plaintiffs' counsel's reputation, preparation, and relationship with opposing counsel. As such, the matter was resolved quickly and efficiently.

### H. The Amount Involved and the Results Obtained.

Based on the terms of the confidential settlement reviewed *in camera* by the Court, the recovery obtained for each Plaintiff can only be described as fully successful.

### I. The Experience, Reputation, and Ability of the Attorneys.

Mr. Oswald has been engaged in the concentrated practice of employment law since 1998, and has developed a reputation and an expertise in the subject area. Mr. Oswald is both a member of National Employment Lawyers Association ("NELA") and a member of the Board of MWELA. Mr. Oswald is President Elect of the Metropolitan Washington Employment Lawyers Association (MWELA), the Washington D.C. affiliate of the National Employment Lawyers Association (NELA), the United States' largest and most renowned plaintiff-side employment lawyers' association. He has been an active member of MWELA for seven years, and he focuses his practice on the litigation of employment related cases, primarily representing plaintiffs.

Mr. Woodfield has been practicing since 1996, with an emphasis on the litigation of employment law for the past seven years. He has been a state and federal litigator since 1996, excepting the period of September 1999 through June of 2000 when he was a postgraduate law student at the University of Oxford in Oxford, England. In addition, Mr. Woodfield spent the

year immediately following his 1995 graduation from the Cumberland Law School of Samford University clerking for the Presiding Judge of Jefferson County in Alabama.  Mr. Woodfield is extremely reputable in the field of employment litigation and has served as counsel in several complex jury trials in employment law cases.  In fact, Mr. Woodfield is a founding Director and the President of the Virginia Employment Lawyers Association (VELA), the Virginia affiliate of NELA, and he took office in December of 2009 as President of the Commonwealth's plaintiff-side employment lawyers' association.  Mr. Woodfield has also successfully prosecuted approximately 30 FLSA representative cases in Florida, Virginia, Maryland, and the District of Columbia.

**J.  The Undesirability of Plaintiff's Case.**

For reasons that will be set forth separately to the Court, the representation of some of the Plaintiffs in this matter carried some challenges that many practitioners may have opted to avoid.

**K.  The Nature and Length of The Employment Law Group, P.C.'s Professional Relationship with Plaintiffs.**

Plaintiff Landaeta contacted The Employment Law Group, P.C. to ask it to represent her in this case.  The Employment Law Group, P.C. has represented the Plaintiffs to the present date; however, the nature of Plaintiffs' claims does not lend to Plaintiffs becoming long-term clients of The Employment Law Group, P.C.  Clients in wage nonpayment matters tend to be one-case clients, as they are unlike an insurance company that can be counted to consistently have files in litigation.  Instead, typical wage nonpayment clients like Plaintiffs only suffer actionable injury once.  Accordingly, The Employment Law Group, P.C. does not anticipate that it will perform any more work on Plaintiffs' behalf after this matter is resolved.

**L. Attorneys' Fees Have Been Awarded in Similar Cases**.

The Employment Law Group, P.C. has represented employees in wage non-payment actions litigated in the District of Columbia, Maryland and Virginia. The recovery secured in this action is a complete success. The matter was settled quickly and efficiently, and the fees and costs are very reasonable in light of the monies recovered.

## CONCLUSION

Plaintiffs Xiomara Landaeta, Ana O. Ceron, Karan Santos, Guadalupe Velasquez, and Azucena Cruz request the following award of attorneys' fees and costs:

**Attorneys' Fees:**               **$32,558.00**

**Costs:**                         **$991.41**

**Total Fees and Costs:**          **$33,549.41**

Respectfully submitted,
Xiomara Landaeta, Ana O. Ceron, Karan Santos,
Guadalupe Velasquez, and Azucena Cruz
*By Counsel*


\_\_\_\_\_/s/  Nicholas Woodfield, Esq._____
R. Scott Oswald, Esq.
Nicholas Woodfield, Esq.
*Counsel for the Plaintiff*
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2883
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
nwoodfield@employmentlawgroup.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was served via the Court's electronic filing system on this the 28th day of April, 2011, to:

Gregg Greenberg, Esq.
Zipin Law Firm LLC
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
(301) 587-9373
(301) 587-9397 (facsimile)

   /s/ Nicholas Woodfield_____
Nicholas Woodfield