## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **XIOMARA LANDAETA,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. WGC-10-3247** |
| | ) | |
| **DA VINCI'S FLORIST, LLC,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### MEMORANDUM OPINION

Pending before the Court and ready for resolution is Plaintiffs' Petition for Award of Attorneys' Fees and Costs (Document No. 18).  Defendants filed a Response (Document No. 21) and Plaintiffs a Reply (Document No. 22).  On May 18, 2011 the Court convened a status conference and heard the parties' positions about Plaintiffs' requested attorneys' fees and costs.

By way of background on November 17, 2010 Plaintiffs Xiomara Landaeta, Ana O. Ceron, Azucena A. Cruz, Karan Marisol Santos, and Guadalupe Valasquez, on behalf of themselves and on behalf of all others similarly situated, filed a complaint against Da Vinci's Florist LLC and Sharon Abarjel.  The five plaintiffs are floral arrangers employed by Da Vinci's Florist LLC.  Sharon Abarjel is the owner and president of Da Vinci's Florist LLC.

The Plaintiffs alleged that they consistently worked more than 40 hours each week and were not compensated at a time and a half rate for any overtime hours worked.  Relief was sought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Maryland Wage Payment and Collection Act, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq.*, the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*, and the common law count of quantum meruit.  *See* Document No. 1.

1

On January 20, 2011 Defendants filed their Answer.  *See* Document No. 4.  On March 22, 2011 the parties filed a Joint Consent to All Further Proceedings by Magistrate Judge Connelly.  *See* Document No. 12.  On April 7, 2011 the parties filed a Consent Motion to Seal Confidential Settlement Agreement.  *See* Document No. 14.  The undersigned granted the consent motion on April 11, 2011.  *See* Document No. 17.

Plaintiffs seek $32,558.00 in attorneys' fees and $991.41 as costs, for a total award of $33,549.41.  Defendants assert, in light of this straightforward and uncontested case, a more appropriate award would be $9,595.00 in attorneys' fees and $450.00 as costs, for a total award of $10,045.00.  In their reply Plaintiffs assert the attorneys' fees and the costs sought are reasonable and should be awarded as requested.

There is no disagreement about the hourly rate for Plaintiffs' counsel.  Plaintiffs request an hourly rate of $400.00 for R. Scott Oswald, an hourly rate of $400.00 for Nichols W. Woodfield and an hourly rate of $115.00 for the legal assistant(s) and law clerk(s).  *See* Document No. 18 at 2.  Defendants stipulate to the reasonableness of the hourly rates.  *See* Document No. 21 at 2 n.2.  The Court notes the hourly rates for Plaintiffs' counsel and for the legal assistant(s) and law clerk(s) are consistent with *Appendix B:  Rules and Guidelines for Determining Attorneys' Fees in Certain Cases* of the Local Rules.  The Court finds the hourly rates, as stipulated by the parties, are reasonable.

Defendants challenge as unreasonable the number of hours claimed by Plaintiffs' counsel in light of this "straightforward and uncontested case."  Not surprisingly, Plaintiffs assert the time expended in this case was necessary and reasonable and the Court therefore should award the attorneys' fees and costs as requested.

In assessing the reasonableness of the time expended, this Court considers the twelve

factors identified in *Johnson v. Georgia Housing Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),

which the Fourth Circuit has adopted.  *See Pellegrin v. Nat'l Union Fire Ins. (In re Abrams &*

*Abrams, P.A.)*, 605 F.3d 238, 244 (4th Cir. 2010).  The twelve *Johnson* factors are: "(1) the time

and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required

to perform the legal service properly; (4) the preclusion of employment by the attorney due to

acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the

time limitations imposed by the client or the circumstances; (8) the amount involved and the

results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

'undesirability' of the case; (11) the nature and length of the professional relationship with the

client; and (12) awards in similar cases."  *In re Abram & Abrams, P.A.*, 605 F.3d at 244 (citation

omitted).  The Court now considers these factors.

A.      *Attorneys' Fees*

        1.      <u>The Time & Labor Required</u>:

        Plaintiffs' counsel spent 165.10 hours on this case.  The Court has carefully reviewed the

eleven (11) pages of billable hours.  The Court notes, for the first eleven lines of entries,

Plaintiffs do not seek compensation.

        The Court begins with a review of the initial hours of this litigation:  investigation until

filing of the returns of service.  On five occasions, between September 14 and December 14,

2010, Jeremy Schneider, paralegal/law student, prepared Landaeta agenda (.50 hours), prepared

agenda for Landaeta meeting (.50 hours), prepared agenda and reviewed materials for Landaeta

meeting (.70 hours), reviewed materials and prepared agenda for Landaeta meeting (1.00 hour)

and reviewed documents and prepared agenda for Landaeta meeting (1.00 hour).  Those five

occasions of preparation were in addition to a meeting on September 14, 2010, a meeting on September 21, 2010, two meetings on October 19, 2010, a meeting on October 26, 2010, a meeting on November 8, 2010 and a meeting on December 14, 2010.  There were also two additional meetings regarding opt-ins.  The Court finds there are an excessive number of meetings and preparations of agenda.  The Court therefore will STRIKE the various entries for preparing agenda, namely, (a) .50 hours or $57.50 for "prepare Landaeta agenda" on September 14, 2010 [#27]; (b) .50 hours or $57.50 for preparing agenda for Landaeta meeting on September 21, 2010 [#31]; (c) .70 hours or $80.50 for preparing agenda and reviewing materials for Landaeta meeting on October 12, 2010 [#34]; (d) 1.00 hour or $115.00 for reviewing materials and preparing agenda for Landaeta meeting on November 8, 2010 [#42]; and (e) 1.00 hour or $115.00 for reviewing documents and preparing agenda for Landaeta meeting regarding returns of service and settlement negotiation on December 14, 2010 [#78].

With regard to drafting the complaint, the first entry is on September 14, 2010 by Jeremy Schneider, noting "Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to review 1st draft of complaint for client review", totaling .30 hours.  Attorneys Nick Woodfield and Scott Oswald, both compensated at $400.00/hour, billed for this .30 hours meeting.  Both Mr. Woodfield and Mr. Oswald have significant legal experience.  The presence of both Mr. Woodfield and Mr. Oswald does not appear to be warranted.  It appears to the Court that Mr. Woodfield was the lead attorney in this case.  The Court thus STRIKES Scott Oswald's billable time of (a) .30 hours or $120.00 for the September 14, 2010 "meeting – to review 1st draft of complaint for client review" [#151].  For the same reason, the Court hereby STRIKES Scott Oswald's billable time of (b) .30 hours or $120.00 for meeting "to discuss status of complaint drafting" on September 21, 2010 [#153]; (c) .30 hours or $120.00 for meeting "to review draft

4

complaint and discovery drafting schedule" on September 28, 2010 [#156]; (d) .30 hours or $120.00 for meeting "to discuss status of opt-in identification and timing of filing" on October 12, 2010 [#159]; (e) .30 hours or $120.00 for meeting "to discuss status of complaint d[r]afting" on October 19, 2010 [#161]; (f) .30 hours or $120.00 for meeting "to discuss status [sic] status of opt-in meeting and complaint drafting" on October 26, 2010 [#163]; (g) .30 hours or $120.00 for meeting "to discuss status result of opt-in meeting" on November 8, 2010 [#165]; (h) .30 hours or $120.00 for meeting "to discuss status of complaint review and discovery drafting" of November 16, 2010 [#173]; (i) .30 hours or $120.00 for meeting "to discuss service of complaint and discovery drafting schedule" of November 30, 2010 [#177]; (j) .20 hours or $80.00 for meeting "to discuss status of filing of returns of service" on December 14, 2010 [#186] and (k) .30 hours or $120.00 for meeting "to discuss case investigation/evaluation protocol" on August 12, 2010 [#141].

On December 2, 2010 Nick Woodfield had a telephone conference with opposing counsel about potential settlement resolution of the case, well before Defendants filed their Answer to the Complaint on January 20, 2011.  On January 5, 2011 Scott Oswald, Nick Woodfield and Jeremy Schneider had a meeting to discuss the status of settlement discussions.  Additionally, on January 24, 2011 Scott Oswald, Nick Woodfield and Jeremy Schneider met to discuss admissions in Defendants' Answer.  And, on March 21, 2011 Scott Oswald, Nick Woodfield and Jeremy Schneider met to discuss status of settlement discussion and fee petition.  Because the Court finds it was not necessary for two attorneys, with 15 plus years' experience to participate in these meetings, the Court hereby STRIKES (a) Scott Oswald's .30 hours or $120.00 on January 5, 2011 [#191], (b) Scott Oswald's .30 hours for $120.00 on January 24, 2011 [#198] and (c) Scott Oswald's .20 hours or $80.00 on March 21, 2011 [#212].

According to the spreadsheet of billable hours on January 11, 2011 Jeremy Schneider met with Scott Oswald and Nick Woodfield to discuss "status of motion for notice" [#81]. Jeremy Schneider billed .30 hours or $34.50. Similarly, on January 11, 2011, both Nick Woodfield and Scott Oswald billed .30 hours ($120.00) each for meeting "to discuss status of motion for notice" [#193-194]. Jeremy Schneider spent 3.00 hours ($345.00) drafting a motion for notice on January 12, 2011 [#82]. Eight days later, on January 20, 2011, Jeremy Schneider continued drafting the motion for notice spending 3.00 hours ($345.00) on this task [#84]. The Court has reviewed the docket and cannot locate *any* motion for notice. No such motion was filed during January of 2011. Plaintiffs filed a Status Report on February 3, 2011. *See* Document No. 8. The next matter filed by Plaintiffs was the Joint Consent to All Further Proceedings by Magistrate Judge Connelly on March 18, 2011. *See* Document No. 12. Because there is no information on the docket or on the spreadsheet of billable hours that the motion for notice was either filed with the Court or served on Defendants, the Court hereby STRIKES *all entries* related to the motion for notice.

For the reasons outlined in the preceding paragraphs, the Court reduces the requested attorneys' fees by **$2,990.00**.

In its careful review of the spreadsheet of billable hours, the Court discovered **eight** instances when an activity is billed **twice**. Those entries are noted below.

| Date | Employee ID | Narrative | Hours on Bill | Rate on Bill | Amount |
|------|-------------|-----------|---------------|--------------|--------|
| 3/11/11 | Jeremy Schneider | Correspond w/ clients re call-in information for conference call w/ Nick Woodfield to discuss settlement proposal (#118) | 0.40 | $115.00 | $46.00 |
| 3/11/11 | Jeremy Schneider | Correspond w/ clients re call-in information for conference call with | 0.40 | $115.00 | $46.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | NWW to discuss settlement proposal (#119) | | | |
| 3/11/11 | Jeremy Schneider | Prepare email for Nick Woodfield use in prep for call w/ clients re settlement offer, including breakdown of award for each Plaintiff (#121) | 0.50 | $115.00 | $57.50 |
| 3/11/11 | Jeremy Schneider | Prepare email for NWW use in prep for call w/ clients re settlement offer, including breakdown of award for each Plaintiff (#122) | 0.50 | $115.00 | $57.50 |
| 3/21/11 | Jeremy Schneider | Coordinate contact of each client re status of returned W-9 form and assign task of translation and contact to same to R. Baca (#128) | 0.50 | $115.00 | $57.50 |
| 3/21/11 | Jeremy Schneider | Coordinate contact of each client re status of returned W-9 form and assign task of translation and contact of same to R. Baca (#129) | 0.50 | $115.00 | $57.50 |
| 3/10/11 | Nick Woodfield | Revised and Edited agreement and responded to email from Opposing Counsel re same (#224) | 0.40 | $400.00 | $160.00 |
| 3/10/11 | Nick Woodfield | Revised and Edited agreement and responded to email from Opposing Counsel re same (#225) | 0.40 | $400.00 | $160.00 |
| 3/17/11 | Nick Woodfield | Met with opt-ins re settlement agreement, answered questions and secured client signatures (#229) | 1.20 | $400.00 | $480.00 |
| 3/17/11 | Nick | Met with opt-ins re | 1.20 | $400.00 | $480.00 |

| | Woodfield | settlement agreement, answered questions and secured client signatures (#230) | | | |
|---|---|---|---|---|---|
| 3/17/11 | Nick Woodfield | Return travel to office (#231) | 0.50 | $400.00 | $200.00 |
| 3/17/11 | Nick Woodfield | Return travel to office (#232) | 0.50 | $400.00 | $200.00 |
| 3/17/11 | Nick Woodfield | Travel to College Park to meet clients (#233) | 0.50 | $400.00 | $200.00 |
| 3/17/11 | Nick Woodfield | Travel to College Park to meet clients (#234) | 0.50 | $400.00 | $200.00 |
| 3/18/11 | Nick Woodfield | Email to Opposing counsel re signed settlement and motion for referral to magistrate and proposed order (#235) | 0.10 | $400.00 | $40.00 |
| 3/18/11 | Nick Woodfield | Email to Opposing counsel re signed settlement agreement and motion for referral to magistrate and proposed order (#236) | 0.10 | $400.00 | $40.00 |

Plaintiffs' attorneys are entitled to compensation for eight (8) entries of billable work, not all sixteen (16) entries. The Court therefore STRIKES the duplicate entries. Plaintiffs' requested attorneys' fees are thus reduced by **$1,241.00**.

In reviewing the spreadsheet of billable hours the Court noted numerous entries regarding the complaint.

| Date | Employee ID | Narrative | Hours on Bill | Rate on Bill | Amount |
|---|---|---|---|---|---|
| 9/14/10 | Jeremy Schneider | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to review 1st draft of complaint for client review (#28) | 0.30 | $115.00 | $34.50 |
| 9/14/10 | Nick Woodfield | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to review 1st draft of | 0.30 | $400.00 | $120.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | complaint for client review (#150) | | | |
| 9/21/10 | Jeremy Schneider | Continue drafting complaint (#30) | 2.00 | $115.00 | $230.00 |
| 9/21/10 | Jeremy Schneider | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status of complaint drafting (#32) | 0.30 | $115.00 | $34.50 |
| 9/21/10 | Nick Woodfield | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status of complaint drafting (#152) | 0.30 | $400.00 | $120.00 |
| 9/28/10 | Nick Woodfield | Began revising and editing complaint (#154) | 1.10 | $400.00 | $440.00 |
| 9/28/10 | Nick Woodfield | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to review draft complaint and discovery drafting schedule (#155) | 0.30 | $400.00 | $120.00 |
| 9/29/10 | Jeremy Schneider | Review changes to complaint from Nick Woodfield, meet w/ Nick Woodfield re same (#33) | 1.00 | $115.00 | $115.00 |
| 9/29/10 | Nick Woodfield | Completed drafting complaint. (#157) | 2.00 | $400.00 | $800.00 |
| 10/19/10 | Jeremy Schneider | Prepare agenda and review materials for Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status of complaint d[r]afting (#37) | 0.70 | $115.00 | $80.50 |
| 10/19/10 | Jeremy Schneider | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status of complaint d[r]afting | 0.30 | $115.00 | $34.50 |

| | | | | | |
|---|---|---|---|---|---|
| | | (#38) | | | |
| 10/19/10 | Nick Woodfield | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status of complaint d[r]afting (#160) | 0.30 | $400.00 | $120.00 |
| 10/26/10 | Jeremy Schneider | Review items and prepare agenda for Updated:  Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status [sic] status of opt-in meeting and complaint drafting (#39) | 0.70 | $115.00 | $80.50 |
| 10/26/10 | Nick Woodfield | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status [sic] status of opt-in meeting and complaint drafting (#162) | 0.30 | $400.00 | $120.00 |
| 11/10/10 | Nick Woodfield | Final revisions and edits to the complaint and prepared same for filing (#172) | 1.00 | $400.00 | $400.00 |
| 11/16/10 | Jeremy Schneider | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status of complaint review and discovery drafting (#44) | 0.30 | $115.00 | $34.50 |
| 11/16/10 | Nick Woodfield | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status of complaint review and discovery drafting (#173) | 0.30 | $400.00 | $120.00 |

The complaint was filed the following day, November 17, 2010.  The Court finds an excessive number of "meetings" were held concerning drafting of the complaint.  With his wealth of experience Nick Woodfield should have accomplished this task in a shorter period of time.  The Court finds as reasonable 2.00 hours billed by Jeremy Schneider on September 21, 2010, 2.00 hours billed by Nick Woodfield on September 29, 2010 and the 1.00 hour billed by Nick Woodfield on November 10, 2010, totaling $1,430.00.   The remaining times billed regarding the complaint the Court finds unreasonable.  Plaintiffs' requested attorneys' fees are thus reduced by **$1,574.00**.

In reviewing the spreadsheet of billable hours the Court noted several entries regarding the petition for fees.

| Date | Employee ID | Narrative | Hours on Bill | Rate on Bill | Amount |
|------|-------------|-----------|---------------|--------------|--------|
| 3/7/11 | Jeremy Schneider | Meet w/ Nick Woodfield to discuss mechanics of drafting/filing petition for fees and costs (#117) | 0.50 | $115.00 | $57.50 |
| 3/15/11 | Jeremy Schneider | Continue drafting Plaintiffs' Petition for Fees and Costs, review declarations for factual portions of same, review Johnson factors and begin applying facts to applicable case law and factors (#124) | 2.80 | $115.00 | $322.00 |
| 3/23/11 | Jeremy Schneider | Finalize draft petition for fees and costs, begin reviewing NWW declaration re same (#131) | 1.60 | $115.00 | $184.00 |
| 4/6/11 | Nick Woodfield | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status of fee petition (#240) | 0.20 | $400.00 | $80.00 |
| 4/22/11 | Nick | Drafted fee petition | 1.90 | $400.00 | $760.00 |

| | Woodfield | submission for court (#211) | | | |
|---|---|---|---|---|---|

The Court finds as reasonable expenses the 2.80 hours billed by Jeremy Schneider on March 15, 2011 and the 1.90 hours billed by Nick Woodfield on April 22, 2011.  The Court STRIKES the other three entries as unnecessary and/or unreasonable.  Plaintiffs' requested attorneys' fees are reduced by **$321.50**.

Finally, in reviewing the spreadsheet of billable hours, the Court noticed a significant number of *internal* e-mails, meetings and teleconferences, *in addition* to tasks performed. Considering the swift resolution of this case, the Court finds these meetings, e-mails or teleconferences excessive.  The Court STRIKES the following entries:  (a) #35 claimed by Jeremy Schneider on October 12, 2010 for $34.50, (b) #43 claimed by Jeremy Schneider on October 18, 2010 for $34.50, (c) # 48 claimed by Phil Becnel on November 30, 2010 for $11.50, (d) #79 claimed by Jeremy Schneider on December 14, 2010 for $23.00, (e) #80 claimed by Jeremy Schneider on January 5, 2011 for $34.50, (f) #83 claimed by Phil Becnel on January 5, 2011 for $11.50, (g) #85 claimed by Jeremy Schneider on January 24, 2011 for $34.50, (h) # 97 claimed by Michael Vogelsang on August 12, 2010 for $34.50, (i) # 115 claimed by Jeremy Schneider on March 3, 2011 for $34.50, (j) #134 claimed by Jeremy Schneider on March 31, 2011 for $34.50, (k) #140 claimed by Nick Woodfield on August 12, 2010 for $120.00, (l) # 142 claimed by Scott Oswald on August 19, 2010 for $120.00, (m) #143 claimed by Scott Oswald on August 20, 2010 for $240.00, (n) #149 claimed by Scott Oswald on September 10, 2010 for $240.00, (o) #158 claimed by Nick Woodfield on October 12, 2010 for $120.00, (p) #164 claimed by Nick Woodfield on November 8, 2010 for $120.00, (q) #175 claimed by Scott Oswald on November 18, 2010 for $120.00, (r) #176 claimed by Nick Woodfield on November 30, 2010 for $120.00, (s) #185 claimed by Nick Woodfield on December 14, 2010 for $80.00, (t)

#190 claimed by Nick Woodfield on January 5, 2011 for $120.00, (u) #197 claimed by Nick Woodfield on January 24, 2011 for $120.00, (v) #218 claimed by Nick Woodfield on March 3, 2011 for $120.00, (w) #228 claimed by Nick Woodfield on March 15, 2011 for $80.00 and (x) #238 claimed by Nick Woodfield on March 21, 2011 for $80.00.  The Court also STRIKES #120 claimed by Jeremy Schneider on March 11, 2011 for $115.00 regarding "Nick Woodfield conference w/clients to discuss proposed settlement."  Nick Woodfield also billed for this conference on March 11, 2011 at #226 ("telephone conference w/ clients to discuss proposed settlement").  Jeremy Schneider does not indicate what he did during this teleconference and therefore is not entitled to compensation.  The Plaintiffs' requested attorneys' fees are reduced by **$2,202.50**.

  2. <u>The Novelty& Difficulty of the Questions</u>

  Plaintiffs contend that Defendants Sharon Abarjel and DaVinci's Florist had incomplete and disorganized payroll records.  "Accordingly, The Employment Law Group, P.C., had to create summaries from Plaintiffs' paychecks and Abarjel and DaVinci's incomplete records to serve as the basis of their claims.  Abarjel and DaVinci's actions forced Plaintiffs to thoroughly and completely analyze Abarjel and DaVinci's records and to then create Excel spreadsheets to produce accurate estimates for Plaintiffs' undercompensated time."  Document No. 18 at 7.

  In their Response Defendants claim this case involved neither novel nor difficult questions.  Defendants acknowledge that Plaintiffs had to spend some time calculating the "half time premium" owed to each Plaintiff.  Defendants contend these calculations could be easily computed by a law clerk in a "few focused hours."

  With regard to how Defendants maintained their records, Defendants note they provided Plaintiffs' counsel with copies of the electronic records from the payroll company.  Plaintiffs

were paid on a bi-weekly basis and not a weekly basis but that fact should not have impeded Plaintiffs' determination of the number of overtime hours worked.  These electronic records were produced very early during discovery.

Defendants assert, with these electronic records, Plaintiffs' counsel could have estimated the unpaid overtime wages and with such information, make an early settlement demand. "Defendants' counsel eagerly invited Plaintiffs to use these records to make a settlement demand which would factor in any adjustment for the possible under-estimation of overtime hours associated with the electronic records.  Plaintiffs' counsel rejected this invitation and refused to make any settlement demand and instead insisted upon basing its settlement only upon original records."  Document No. 21 at 3.

Defendants ultimately located the original payroll records and produced them to Plaintiffs' counsel.  Once received Defendants assert Plaintiffs' counsel engaged in "a pro-longed and inefficient effort to translate the records into simple spreadsheets – – resulting in a mere nominal change from calculations that could have been quickly and efficiently gleaned from the electronic records but what resulted in a substantial and avoidable increase in Plaintiffs' fee request."  *Id.* at 4.  Plaintiffs filed a Reply but did not address this issue of the payroll records.

The Court has carefully reviewed the spreadsheet of billable hours and finds the following entries relevant to the dispute:

| Date | Employee ID | Narrative | Hours on Bill | Rate on Bill | Amount |
|------|-------------|-----------|---------------|--------------|--------|
| 12/13/10 | Jeremy Schneider | Review client pay information provided by OC[1], create spreadsheet tracking overtime compensation owed and | 4.00 | $115.00 | $460.00 |

---

[1] Opposing Counsel.

| | | | | | |
|---|---|---|---|---|---|
| | | estimate damage accordingly, discuss same w/ Nick Woodfield. (#75) | | | |
| 2/8/11 | Jeremy Schneider | Meeting with OC and client here (#90) | 1.00 | $115.00 | $115.00 |
| 2/8/11 | Jeremy Schneider | Review payroll records from Defendants and compile and summarize same for settlement purposes (#91) | 7.00 | $115.00 | $805.00 |
| 2/8/11 | Jeremy Schneider | Scott Oswald/Nick Woodfield/Jeremy Schneider meeting – to discuss status review of employer's wag[e] information (#92) | 0.30 | $115.00 | $34.50 |
| 2/11/11 | Jeremy Schneider | Finalize damages estimates, discuss same w/ Nick Woodfield, forward same to OC for use in settlement negotiations (#93) | 3.00 | $115.00 | $345.00 |
| 2/15/11 | Jeremy Schneider | Review client timesheets and revise accordingly per statutory limitations on years of damages(#94) | 2.00 | $115.00 | $230.00 |
| 2/28/11 | Jeremy Schneider | Draft email to Nick Woodfield re changes to damages estimates, set up meeting to discuss same and potential meeting w/ OC re damages calculations, formulas in spreadsheets, and settlement (#108) | 1.70 | $115.00 | $195.50 |
| 2/28/11 | Jeremy Schneider | Review email and voicemail from OC re damages estimates and applicable statutory provisions and their influence of liquidated damages, revise spreadsheet to include same (#109) | 2.40 | $115.00 | $276.00 |

| 3/2/11 | Jeremy Schneider | Draft agenda for Landaeta meeting w/ Scott Oswald and Nick Woodfield to discuss status of settlement negotiations (#110) | 0.60 | $115.00 | $69.00 |
|--------|------------------|------|------|---------|--------|
| 3/2/11 | Jeremy Schneider | Draft email memorializing results of Jeremy Schneider meeting w/ OC re damages estimates and relay offer of settlement in relation to the estimated fees calculated (#111) | 1.50 | $115.00 | $172.50 |
| 3/2/11 | Jeremy Schneider | Jeremy Schneider Meeting with OC re damages estimates and formulas used in estimate spreadsheet (#112) | 1.00 | $115.00 | $115.00 |
| 3/2/11 | Jeremy Schneider | Nick Woodfield/Jeremy Schneider meeting to discuss damages estimates and result of Jeremy Schneider meeting w/ OC re damages (#113) | 0.50 | $115.00 | $57.50 |
| 3/2/11 | Jeremy Schneider | Review client damages based on questions from OC and Defendant, revise estimates accordingly, discuss same w/ Nick Woodfield (#114) | 3.00 | $115.00 | $345.00 |

The Court is not persuaded that Plaintiffs' counsel needed the original payroll records to "crunch numbers" in order to estimate the amount of unpaid overtime wages. The Court finds 23.30 hours expended by Jeremy Schneider *alone* on the payroll records is excessive. Plaintiffs' counsel had more than adequate information when the firm received copies of the electronic records in December 2010. Thus the Court hereby STRIKES the following entries; (a) 7.00 hours or $805.00 billed by Jeremy Schneider to "review payroll records from Defendants and

compile and summarize same for settlement purposes" on February 8, 2011; (b) .30 hours or

$34.50 billed by Jeremy Schneider for "Scott Oswald/Nick Woodfield/Jeremy Schneider

meeting – to discuss status review of employer's wag[e] information on February 8, 2011; (c) .30

hours or $120.00 billed by Nick Woodfield for "Scott Oswald/Nick Woodfield/Jeremy Schneider

meeting – to discuss status review of employer's wag[e] information" on February 8, 2011

[#207]; (d) .30 hours or $120.00 billed by Scott Oswald for "Scott Oswald/Nick

Woodfield/Jeremy Schneider meeting – to discuss status review of employer's wag[e]

information" on February 8, 2011 [#208]; (e) 3.00 hours or $345.00 billed by Jeremy Schneider

for finalizing "damages estimates, discuss same w/ Nick Woodfield, forward same to OC for use

in settlement negotiations" on February 11, 2011; (f) 2.00 hours or $230.00 billed by Jeremy

Schneider for "review[ing] client timesheets and revis[ing] accordingly per statutory limitations

on years of damages" on February 15, 2011; (g) 1.70 hours or $195.50 billed by Jeremy

Schneider for "draft[ing] email to Nick Woodfield re changes to damages estimates, set up

meeting to discuss same and potential meeting w/ OC re damages calculations, formulas in

spreadsheets, and settlements" on February 28, 2011; (h) 2.40 hours or $276.00 billed by Jeremy

Schneider for "review[ing] email and voicemail from OC re damages estimates and applicable

statutory provisions and their influence of liquidated damages, revise spreadsheet to include

same" on February 28, 2011; (i) .60 hours or $69.00 billed by Jeremy Schneider for "draft[ing]

agenda for Landaeta meeting w/ Scott Oswald and Nick Woodfield to discuss status of

settlement negotiations" on March 2, 2011; and (j) 1.50 hours or $172.50 billed by Jeremy

Schneider for "draft[ing] email memorializing results of Jeremy Schneider meeting w/ OC re

damages estimates and relay offer of settlement in relation to the estimated fee calculated" on

March 2, 2011.  The Court however approves three other entries billed by Jeremy Schneider for

work performed on March 2, 2011.  Based on the above, Plaintiffs' requested attorneys' fees are reduced by **$2,367.50**.

      3.    <u>The Level of Skill Required to Perform the Legal Service Properly</u>

Plaintiffs contend their counsel executed their case with organized efficiency.  Plaintiffs note their counsel specializes in employment law and related matters.  "The Employment Law Group, P.C.'s diligence, strategic discovery of materials, and information relevant to Plaintiffs' claims and damages, and its knowledge of employment law trial practice made The Employment Law Group, P.C. uniquely situated to provide Plaintiffs with the best possible representation."  Document No. 18 at 7.

Defendants claim, despite the experience and skill of Plaintiffs' counsel, their work in this case was inefficient.  "Plaintiffs' counsel (with its self admitted robust FLSA practice) should have (1) quickly recognized that this was a straight forward overtime claim without the possibility of exemption during the initial intake and investigation period; (2) utilized past research and a previously drafted FLSA Complaint to aid in the expediency of drafting the Complaint; and (3) utilized previously crafted excel formulas and spreadsheets to calculate damages."  Document No. 21 at 4.

In reviewing the spreadsheet of billable hours, the Court notes the earliest activity in this litigation occurred on August 12, 2010 when there was a teleconference involving Scott Oswald, Nick Woodfield and paralegal/law student Michael Vogelsang "to discuss case investigation/ evaluation protocol."  After Michael Vogelsang performed certain tasks on August 13, 16 and 17, 2010, it is surprising that Michael Vogelsang was tasked with researching FLSA and Maryland wage exceptions and Maryland human rights act, researching case law regarding undocumented plaintiff rights and drafting an opinion letter.  The facts in this case were

straightforward.  Mr. Oswald and Mr. Woodfield are well-versed in FLSA and Maryland wage exceptions and with the law regarding undocumented plaintiffs' rights.  Thus tasking the paralegal/law student to spend 5.80 hours researching these areas of law and an additional 6.30 hours drafting an opinion letter was not very efficient considering the straightforward nature of the dispute in this case.  The Court recognizes that the paralegal/law student would need to check for recent opinions on topics germane to this litigation.  Thus the .70 hours or $80.50 to "review and finalize opinion letter" the Court will consider as time spent researching for recent opinions. The Court however STRIKES (a) 3.10 hours or $356.50 billed by Michael Vogelsang for "research[ing] FLSA and MD wage exceptions, MD human rights act" on August 18, 2010 [#102]; (b) 2.70 hours or $310.50 billed by Michael Vogelsang for "research[ing] case law regarding undocument[ed] plaintiff rights" on August 19, 2010 [#104]; (c) 6.30 hours or $724.50 billed by Michael Vogelsang for "draft[ing] opinion letter" on August 20, 2010 [#105]; and (d) 2.50 hours or $1,000.00 billed by Scott Oswald for "review[ing] and edit[ing] opinion letter" on August 23, 2010 [#146].  Plaintiffs' requested attorneys' fees are reduced by **$2,391.50**.

    4.    <u>The Preclusion of Employment by the Attorney Due to Acceptance of the Case</u>

The attorneys representing Plaintiffs have a robust employment law practice.  The firm routinely declines 150 to 200 offers of employment each week.  By accepting Plaintiffs' case, the firm has forgone other work where the firm would have been able to charge the full hourly rates of its employees.  In their Response Defendants argue any preclusion of additional work "falls squarely on Plaintiffs' counsel's inefficiency and cannot give a basis for the fee award Plaintiffs' counsel requests."  Document No. 21 at 5.

Because Defendants expressed interest in an early settlement of this litigation, the Court declines to consider this factor in favor of Plaintiffs.

5.      <u>The customary fee</u>

There is no dispute about the hourly rates of Plaintiffs' counsel.  This matter has been addressed in detail *supra*.

6.      <u>Whether the Fee is Fixed or Contingent</u>

The Employment Law Group, P.C. accepted Plaintiffs' claims on a contingency fee basis, meaning the firm paid all costs up front.  Although acknowledging this fact, Defendants assert the nature of the case is one where the likelihood of success was virtually guaranteed, considering the experience of Plaintiffs' counsel.  "This fact must mitigate any consideration this Court affords Plaintiffs' counsel's argument as to any risk undertaken."  Document No. 21 at 5. Contingency cases are by nature risky.  However the nature of this particular litigation, especially in light of Defendants' early interest in resolving this case, mitigate against weighing this factor heavily in favor of Plaintiffs for determining the reasonableness of the requested attorneys' fees.

7.      <u>The Time Limitations Imposed by the Client or the Circumstances</u>

Both sides acknowledge the case was resolved quickly.  Defendants assert the case could have been resolved sooner if Plaintiffs' counsel had not "engaged in endeavors unrelated to achieving an expedited settlement, thus causing the instant disputed fee petition."  Document No. 21 at 6.  The Court has already addressed this issue by reducing the requested award of attorneys' fees for hours claimed reviewing payroll records, creating spreadsheets, etc.

8.      <u>The Amount Involved and the Results Obtained</u>

The Court has reviewed the terms of the confidential settlement *in camera*.  Plaintiffs were successful in this matter.

9.      The Experience, Reputation and Ability of the Attorneys

There is no dispute about Scott Oswald's and Nick Woodfield's significant experience in employment law, excellent reputations and well-known abilities.  Defendants note however that they at all times conceded liability to Plaintiffs' case.  "To this end, Defendants filed no motions and raised no defenses.  As a result, even though Plaintiffs' attorneys are excellent, this was not a matter in which they flexed their legal or intellectual muscle."  Document No. 21 at 6.  Plaintiffs challenge Defendants' assertion that they conceded liability at all times.  Plaintiffs note, in Defendants' Answer, they denied virtually every substantive allegation in Plaintiffs' Complaint.  "Moreover, aside from denying liability, Defendants also raised three defenses and prayed for the Court's relief. . . This pleading is not the product of a litigant who has conceded liability[.]"  Document No. 22 at 2.

The Court acknowledges the prudent action by Plaintiffs' counsel, to prepare for potential adverse developments in the case even though the opposing counsel indicated his clients' willingness to settle.  A case is not settled until the settlement agreement has been signed.

10.     The "Undesirability" of the Case

The Court would characterize as *low* the "undesirability" of the case.

11.     The Nature and Length of the Professional Relationship with the Clients

The attorneys for Plaintiffs assert, due to the nature of Plaintiffs' claims (non-payment of overtime wages), this case does not lend itself to continuous or a long-term attorney-client relationship.  Contrarily, Defendants note, due to the quick and successful resolution of Plaintiffs' claims, Plaintiffs' attorneys "will surely beget future engagements from Plaintiffs' family and friends."  Document No. 21 at 7.  Although this type of dispute does not foster a long-

term attorney-client relationship, the Court agrees with Defendants that there are some potential lasting benefits from the representation.

12.    <u>Awards in Similar Cases</u>

Although this Court is aware of awards in similar non-payment of overtime wages cases, in this case the Court has determined the *reasonableness* of the award based on *when* the case was resolved, *i.e.,* not only before any dispositive motions were filed, but also well before discovery closed.

B.    *Costs*

In determining compensable costs this Court begins with Federal Rule of Civil Procedure 54(d)(1) which states, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The Court must also consider 28 U.S.C. § 1924 which states,

> Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

Finally although not mandatory, this Court will use as a guide the *Guideline for Bills of Costs (D. Md. 2010) ("Guideline")*.

At the outset the Court notes no affidavit accompanies the spreadsheet of costs. Moreover Plaintiffs have failed to submit itemized receipts of the costs claimed.

Plaintiffs are entitled to a fee in the amount of **$350.00**, the fee for filing the original Complaint. Defendants do not contest this fee.

Defendants contend Plaintiffs are entitled to $50.00 each for service of process on the Defendants. According to the spreadsheet of billable hours Defendant Sharon Abarjel was

served on December 2, 2010 by Phil Becnel (#65).  Since Sharon Abarjel is also the owner and president of Da Vinci's Florist LLC, Defendant Da Vinci's Florist was presumably simultaneously served.  In reviewing the spreadsheet of costs there is not an entry reflecting service occurred on December 2, 2010.  The Court will award Plaintiffs **$100.00** for service of process.

As outlined in the *Guideline* costs associated with investigative services are nontaxable. The fifteen (15) entries for private investigator therefore are not compensable.  Likewise costs associated with computerized legal research are not taxable in this Court.  Plaintiffs list two entries for computerized legal research.  The claimed telephone/internet conference calls are not recoverable.  Finally the November 22, 2010 "food and drinks during clients' meeting" is not taxable in this Court.

*Conclusion*

For the foregoing reasons, Plaintiffs' Petition for Award of Attorneys' Fees and Costs will be granted in part and denied in part.  An Order will be entered separately.


/s/

October 21, 2011        _____

WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE